UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ANDREW J. CHERRONE, JR., ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CAUSE NO. 3:12-CV-327 WL |
| ) | |
| SUPERINTENDENT, INDIANA ) | |
| STATE PRISON, ) | |
| ) | |
| Respondent. ) | |

**OPINION AND ORDER**

Petitioner Andrew Cherrone, a prisoner confined at the New Castle Correctional Facility, submitted a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 dealing with a loss of earned credit time in a disciplinary hearing at the Indiana State Prison. The Court reviewed the petition pursuant to Rule 4 of the Rules Governing Section 2254 Cases, dismissed grounds one, three, four, and six, and allowed the Petitioner to proceed on ground two of his petition, in which he asserts that he was denied the right to call witnesses, and on ground five, in which he asserts that he was denied the right to present evidence.

Cherrone asserts that the Disciplinary Hearing Officer violated his due process rights in the disciplinary proceeding that led to the deprivation of earned credit time. Where prisoners lose good time credits at prison disciplinary hearings, the Fourteenth Amendment's Due Process Clause guarantees them certain procedural protections, including (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision maker; (3) opportunity to call witnesses and present evidence in

defense when consistent with institutional safety and correctional goals; and (4) a written statement by the fact finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974). There must also be "some evidence" to support the decision of the prison disciplinary board." *Superintendent, Mass. Correctional Institution v. Hill*, 472 U.S. 445, 455 (1985).

On May 9, 2011, Correctional Officer Robert Hough wrote a conduct report alleging that Cherrone committed sexual acts with a staff member. The conduct report states that:

> Offender Cherrone was [the] subject of an Internal Affairs Investigation in which allegations of his engaging in sexual activity with a staff member were made.
>
> The investigation did reveal the truthfulness of the allegations
>
> *For additional information see Confidential Report of Investigation 11-ISP-0046*

(DE 12-1). The report of investigation of the incident, summarizing the results of the investigation into the allegations against Cherrone, reads as follows:

> During the investigation of Case Report 11-ISP-0046, over a two month period, evidence was discovered which did prove that Offender Andrew Cherrone 994200 did engage in a sexual act with a staff member at the Indiana State Prison.
>
> *For additional information see Confidential Report of Investigation 11-ISP-0046*

(DE 12-2).

At screening, Cherrone pled not guilty, requested witness statements from Officers Michelle Manista, A. Nunn, and Michael Spencer, and requested as physical evidence

"photos or camera" (DE 12-3). On May 16, 2011, the disciplinary hearing officer determined that allowing Cherrone to view the video evidence he requested would jeopardize the security of the facility because allowing inmates to see a security videotape could provide Cherrone with knowledge of the security camera capabilities (DE 12-5). Instead, the hearing officer viewed the video *in camera*, and wrote the following video review form summary:

> When viewing the camera in the OT dept. on 4-15-11 @ 2:50 pm to 2:54 pm I saw ofd Cherrone engaging in sexual acts with Ofc. Manista. In detail I saw her sitting on a cabinet with her pants off and ofd. Cherrone standing in front of her having intercourse. Ofd. Cherrone also engages in oral sex with ofc. Manista.

*Id.*

After viewing the security video, the hearing officer conducted a disciplinary hearing, found Cherrone guilty of sexual acts with a staff member, and sanctioned him with sixty days disciplinary segregation and deprivation of sixty days of earned credit time (DE 12-6). In the report of disciplinary hearing, the hearing officer stated that:

> Ofc. Manista's wit. statement is not provided due to her no longer being employed by the DOC. After reviewing the video and IA report I believe they support the charge and the conduct report, I therefore find him guilty.

(DE 12-6). The Petitioner appealed unsuccessfully to both the facility head and the Indiana Department of Correction ("IDOC") final reviewing authority (DE 12-8).

In ground two of his petition, Cherrone asserts that he was denied the right to obtain a witness statement from Officer Manista, that he was denied the right to obtain proper witness statements from Officers Nunn, and Spencer, and that he was denied the opportunity to request information from Kenneth Braun (DE 1 at 3-4*)*. Cherrone further

3

assets that he should have been provided with at least a redacted copy of statements Officer Manista made to the investigator during the investigation of this incident, and that Officer "Manista should have been informed that an additional statement was being requested by her alleged cohort" (DE 1 at 4).

Among the basic requirements of due process in prison disciplinary proceedings is the opportunity for the inmate to call witnesses and present evidence in his defense. *Wolff v. McDonnell*, 418 U.S. at 563-567. When he was screened, Cherrone was afforded the opportunity to request witnesses, and he requested Officers Manista, Nunn and Spencer as witnesses. The record before the Court establishes that Officers Nunn and Spencer did provide witness statements as requested (DE 12-4 at 1 and 2), that Officer Manista was no longer available to provide a statement as requested by Cherrone but that she had made statements to the investigating officer during the investigation, and that Cherrone did not request Braun as a witness when he was screened.

Officers Nunn and Spencer provided witness statements in which they stated that they had "no knowledge of this situation" (DE 12-4 at 1 and 2). In his traverse, Cherrone argues that these officers violated IDOC policy which, he alleges, requires that staff members "must provide a reason why" they have no knowledge, "such as . . . 'because I did not work at that post,' or 'I did not work that day'" (DE 19 at 5). But violations of prison disciplinary policies during the course of prison disciplinary proceedings do not state a claim for federal habeas relief. *Hester v. McBride*, 966 F.Supp. 765, 774-75 (N.D.Ind. 1997) (violations of IDOC disciplinary policy do not state a claim for federal habeas relief).

4

Officers Nunn and Spencer's statements that they had no knowledge of whether Officer Manista and Cherrone engaged in sexual acts are self explanatory. And unless Cherrone and Officer Manista engaged in sexual acts in these officers' presence, which Cherrone does not suggest, they would not have any personal knowledge of whether or not Cherrone and Officer Manista engaged in sexual activity.

The hearing officer concluded that Officer Manista no longer worked for the IDOC by the time Cherrone requested a witness statement from her and that she was therefore unavailable as a witness. In his traverse, Cherrone challenges the finding that Manista was no longer employed at the prison at the date of his hearing, but Federal courts do not second guess a disciplinary hearing board's factual findings or reweigh the evidence. *Superintendent, Mass. Correctional Institution v. Hill*, 472 U.S. at 455-56.

Cherrone also argues, in his traverse, that under *Ponte v. Real*, 471 U.S. 491 (1985), if prison officials refuse to call a witness requested by a prisoner, the burden is on them to explain their decision. Cherrone further argues that "the reason given by Stacy Nolan is not a legitimate excuse in this matter" (DE 10 at 3). This Court disagrees, and concludes that if a proposed witness no longer works for the IDOC, the Department has no obligation to attempt to obtain a statement from that proposed witness.[1]

Cherrone suggests that he should have been given redacted copies of Officer Manista's statements to the investigating officer. These statements are located in the

---

[1] The investigative report establishes that on May 11 and 12, 2011, before Cherrone's hearing, the investigator documented several unsuccessful attempts to contact Manista at home, and notes that she never returned his phone calls. So even had IDOC officials attempted to obtain another statement from Manista on Cherrone's behalf, it is uncertain that they would have been able to obtain a statement from her.

investigative file, and the hearing officer reviewed them *in camera.* But under *Wolff v. McDonnell*, prisoners' access to specific evidence may be restricted if it would be unduly hazardous to institutional safety or correctional goals. Moreover, there is no suggestion from the record that Cherrone asked to see Officer Manista's statements to the investigator, and the right to request evidence is waived unless the prisoner requests the evidence before the hearing. *Miller v. Duckworth*, 963 F.2d 1002, 1004 n.2 (7th Cir. 1992).

In his petition, Cherrone also asserts that he was denied the "opportunity to request information from Kenneth Braun before the hearing" (DE 1 at 4*).* Cherrone had the opportunity to request a statement from Braun when he was screened, but did not do so (DE 12-3). *Wolff v. McDonnell* requires that prisoners be permitted to submit relevant exculpatory evidence and witness statements, but that right is waived unless the prisoner requests the evidence or witnesses statements before the hearing. "The law of this circuit does not entitle a prisoner to wait until the day of his hearing to request to call witnesses." *Miller v. Duckworth*, 963 F.2d at 1004 n.2.

In ground five of his petition, Cherrone asserts that he was denied the right to present evidence. The hearing officer did not allow Cherrone to see the video showing his sexual contact with Officer Manista for security reasons. Prisoners do not have an absolute right to view security videotapes. *Perotti v. Marberry*, 355 F3d. Appx. 39, 41 (7th Cir. 2009) (Under *Wolff v. McDonnell,* prisoners' access to specific evidence may be restricted if it would be "unduly hazardous to institutional safety or correctional goals." and due process is protected where "the hearing officer personally viewed the videotape").

Cherrone does not allege in his petition for writ of *habeas corpus* that the hearing officer's decision to view the videotape herself because allowing him to view it could jeopardize institutional security violated his due process rights. Rather, Cherrone alleges that the hearing officer "abused her position" by denying him the right to personally view photographs from the video "if any exist" (DE 1 at 7).[2] In his *habeas* petition, Cherrone concedes that there may be valid security grounds to justify precluding inmates from seeing security videos, but argues that "these concerns are not applicable" to still photographs taken from such videos (*Id.*).

Cherrone's petition for writ of *habeas corpus* establishes that he does not know whether or not there were any still photographs taken of his sexual encounter with Officer Manista (DE 1 at 7). The Respondent has submitted the entire administrative record, including the complete investigative report, and there are no still photographs contained in the record. Accordingly, Cherrone's claim that he was denied access to still photographs states no due process violation because, in this case, there were no such photographs, and he does not have the right to request that such photographs be made. Unlike in a criminal

---

[2] In his traverse, Cherrone appears to argue that not allowing him to personally view the videotape constituted a due process violation. He even makes the intriguing argument that he "knew about the camera and where it was, and blocked it on several occasions" and suggests that "this gives Cherrone the same perspective of the camera" (DE 19 at 7). But Cherrone did not present a claim that he should have been allowed to personally view the videotape in either his institutional appeal (DE 12-8) or in his petition for writ of *habeas corpus* (DE 1). The principles of exhaustion of available state remedies and procedural default apply to prison disciplinary hearings. *Markham v. Clark*, 978 F.2d 993 (7th Cir. 1992). Failure to raise an issue on appeal to the Indiana Department of Correction's final reviewing authority is a waiver of the claim. *Eads v. Hanks*, 280 F.3d 728, 729 (7th Cir. 2002). Moreover, Rule 2(c)1 of the Rules Governing Section 2254 cases in the United States District Courts requires that the petition for writ of habeas corpus "specify all of the grounds for relief available to the petitioner." Because Cherrone did not present a claim in his administrative appeal that not allowing him to see the videotape himself violated his due process rights, and because he did not raise that claim in his petition for writ of habeas corpus, this Court will not entertain such a claim in its review of Cherrone's petition for writ of habeas corpus.

prosecution, an inmate is not entitled to the creation of favorable evidence. *See Jemison v. Knight*, 244 Fed. Appx. 39, *2 (7th Cir. July 20, 2007) (inmate was not entitled to require IDOC to conduct testing in connection with prison disciplinary hearing); *Outlaw v. Wilson*, No. 3:07cv54, 2007 WL 1295815, at *2 (N.D. Ind. Apr. 30, 2007) (inmate had no right to creation of favorable evidence in the form of handwriting analysis or lie detector test); *see also Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993) (inmate in disciplinary proceeding was not entitled to urinalysis test to corroborate charge of drug use); *Holt v. Caspari*, 961 F.2d 1370, 1372 (8th Cir. 1992) (inmate was not entitled to have substance suspected to be drugs tested by a laboratory in prison disciplinary proceeding).

Finally, this Court concludes that any due process errors the hearing officer may have made in the proceeding under review were harmless error. In *habeas corpus* cases, a due process error is harmless unless it had a substantial and injurious effect on the outcome of the proceeding. *O'Neal v. McAninch*, 513 U.S. 432 (1995). This Court has reviewed the security videotape of this incident, and finds that it is as described by the hearing officer in her video review form summary (DE 12-5). That is to say, the videotape establishes that on April 15, 2011, an inmate the hearing officer identifies as Cherrone engaged in sexual acts with a female correctional officer the hearing officer identifies as Officer Manista. At the conclusion of the incident, the inmate reaches up and blocks the camera with his hand, just as Cherrone describes in his traverse.

Because the videotape evidence is so overwhelming, clear, and convincing, the lack of witness statements from Manista and Braun, the written statements from Nunn and

Spencer that they had no knowledge of the incident, the fact that Cherrone was not given a redacted statement from Manista, and that Cherrone was not shown either the videotape or still photographs from the videotape simply had no substantial and injurious effect on the outcome of the proceeding.

This Court does not believe that the hearing officer committed any procedural due process error in Cherrone's disciplinary proceeding on the charge that he engaged in sexual acts with Manista. But even if the hearing officer had committed any due process errors, those errors would have been harmless because the videotape conclusively established Cherrone's guilt and the errors alleged by Cherrone and would not have had an effect on the outcome of the proceeding.

For the foregoing reasons, the court the court DENIES this petition for writ of habeas corpus and DIRECTS the clerk to close this case.

**SO ORDERED**

DATED: November 21, 2012

                                        s/William C. Lee
                                        William C. Lee, Judge
                                        United States District Court